UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TAMARA M. HARRIS
    Plaintiff,

-against-

QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE
RICHARD BROWN, ESQ.
JOAN RITTER, ESQ.
JOHN RYAN, ESQ.
JIM QUINN, ESQ.
LAURA HENIGMAN, ESQ.
N.Y. STATE UNIFIED COURT SYSTEM- OFFICE OF COURT ADMINISTRATION
LIEUTENANT (FNU) HUNTER, ESQ.

---

**RECEIVED APR 24 2008 PRO SE OFFICE**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**AMON, J.**

**BLOOM, M.J.**

    Plaintiff, TAMARA M. HARRIS, appearing pro se, for her Complaint against Defendants Queens County District Attorney's Office, Richard Brown, Esq., Joan Ritter, Esq., John Ryan, Esq., Jim Quinn, Esq., Laura Henigman, Esq., the New York State Unified Court System- Office of Court Administration, and Lieutenant (FNU) Hunter, alleges as follows:

1.     This is an action for defamation, intentional interference with prospective economic advantage, and intentional infliction of emotional distress under the laws of the State of New York, as well as an action for violations of the First and Fourteenth Amendments of the United States Constitution, as well as Civil Rights violations.

### JURISDICTION AND VENUE

2.     This is an action arising under the laws of the State of New York. This court has jurisdiction over the subject matter of this action under 28 U.S.C. Section 1331, there being a federal question. Venue is proper in this District under 28 U.S.C. Section 1391(b). Notice of Intention to File a Claim against the above mentioned defendants was previously filed within 90 days of the accrual of the cause of action, pursuant to Section 10 of the Court of Claims Act and Section 50-i of the General Municipal Law.

### PARTIES

3.     Plaintiff, Tamara M. Harris, resides at 10 West 15th Street, Apt. 324, New York, NY 10011.

4.     Defendants Queens County District Attorney's Office, Richard Brown, Esq., Joan Ritter, Esq., John Ryan, Esq., Jim Quinn, Esq., and Laura Henigman maintain their

principal place of business at 125-01 Queens Blvd., Kew Gardens, NY 11415. Lieutenant (FNU) Hunter, employed by the N.Y. State Unified Court System-Office of Court Administration, works at the Queens Criminal and Supreme Courthouse located at 125-01 Queens Blvd., Kew Gardens, NY 11415. The principal place of business for the N.Y. State Unified Court System- Office of Court Administration, is 25 Beaver Street, New York, N.Y. 10004.

## FIRST CAUSE OF ACTION-
## WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

5. From August 9, 2005 to April 24, 2007, I was employed as an assistant district attorney at the Queens County District Attorney's Office.

6. On or about January of 2007, the Criminal Court Bureau Chief, Joan Ritter, and the Intake Bureau Chief, Laura Henigman, learned that Bernard, the janitor at the Queens District Attorney's Office, had been working at the D.A.'s Office while infected with the contagious Tuberculosis disease.

7. On or about January of 2007, Bernard, the janitor, was hospitalized at St. Barnabus Hospital, in the Bronx. Joan Ritter and Laura Henigman visited him, wearing masks, so as not to contract the Tuberculosis disease.

8. At no point in time, prior to April of 2007, did either Joan Ritter or Laura Henigman inform the prosecutors or support staff at the Queens County District Attorney's Office that Bernard had contracted the Tuberculosis disease, and that by working in the D.A.'s Borough Hall building, he had exposed both prosecutors and support staff to a highly contagious and potentially terminal disease. Although Joan Ritter and Laura Henigman alerted Richard Brown, Jim Quinn, and John Ryan to the possibility of exposure, none of these state officials warned employees at the Queens District Attorney's Office that they may have contracted Tuberculosis and should, therefore, be tested.

9. At no point in time, immediately after discovering Bernard had exposed the entire D.A.'s Office to Tuberculosis, did Joan Ritter, Laura Henigman, Jim Quinn, John Ryan, or Richard Brown, ever notify the Department of Health of the situation. Instead, all of these state officials concealed the fact that there may have been a Tuberculosis outbreak.

10. On or about April of 2007, after being hospitalized for quite a while, the Department of Health became alerted to Bernard's condition and decided to conduct Tuberculosis tests at the Queens District Attorney's Office, to find out if any of the employees had contracted Tuberculosis.

11. On or about April 15, 2007, the Department of Health's Bureau of Tuberculosis Control conducted Tuberculosis tests in the Borough Hall Building of the Queens District

Attorney's Office, located at 120-55 Queens Blvd., Kew Gardens, NY 11415.

12. On or about April 20, 2007, I learned that Assistant District Attorney, Brad Chain, who shared an office with me, had tested positive for Tuberculosis. Also testing positive for Tuberculosis, were numerous other prosecutors and support staff, whose offices were in the immediate vicinity of the office I shared with Brad Chain.

13. On or about April 20, 2007 I had a Tuberculin skin test to determine whether I also had contracted the disease. The results of the Tuberculin skin test were negative. I had not contracted Tuberculosis.

14. On or about April 20, 2007 I vocalized my concerns about working in a tuberculosis infested environment. Specifically, I confronted my supervisor, Pamela Byer and the Criminal Court Bureau Chief, Joan Ritter, about my fears of working in an office with an office-mate who had tuberculosis, in the vicinity of other employees suffering from the same disease. I was met with an angry and dismissive response by my superiors and ordered to go back to work. My supervisor curtly told me that everyone who had contracted the tuberculosis infection had had chest x-rays and that those x-rays showed that none of these infected were contagious carriers. She told me to continue working in the office with Brad Chain, despite my concerns of contracting tuberculosis.

15. On Monday, April 23, 2007, I contacted the Bureau of Tuberculosis Control, specifically Magdali Calderon, the Public Health Epidemiologist. She informed me that those who had tested positive for Tuberculosis at the Queens District Attorney's Office had not yet received chest x-rays to determine whether or not they had the active and contagious tuberculosis disease, as opposed to latent tuberculosis infection. Magdali Calderon also informed me that those who were infected were urged to take antibiotics to treat the infection, but that if they chose not to take their medicine, they would still be allowed to return to the office and work alongside non-infected prosecutors.

16. Magdali Calderon indicated that there was a possibility that, if I returned to work, I would contract tuberculosis, since there was a possibility some of those infected with tuberculosis were contagious. According to Ms. Calderon, absent a chest x-ray, it was impossible, at that point, to determine who among the infected people was contagious and who was not. Her statements to me were in direct contravention of the lies my supervisors had told me on April 20, 2007, when ordering me back to work.

17. Ms. Calderon further states that, as of the morning of April 20, 2007, there were at least ten confirmed cases of Tuberculosis at the Queens District Attorney's Office and that the results were still coming in.

18. On or about April 23rd, 2007, subsequent to learning from the Bureau of Tuberculosis Control that my superiors at the Queens District Attorney's Office lied to me about the contagion, I contacted the press. I had hoped that exposure of the outbreak to the public would force the D.A.'s Office to take precautions against further contagion.

Forcing non-infected people to continue working alongside infected people exemplified a total lack of concern, on the part of the Queens District Attorney's Office, for the health and safety of its employees. In responding to my concerns, members of the press informed me that they had contacted Joan Ritter and Laura Henigman of the Queens District Attorney's Office, and that the District Attorney's Office denied the existence of a Tuberculosis outbreak and denied that anyone working at the Queens D.A.'s Office was infected with Tuberculosis.

19.   On April 24, 2007 I informed Jim Quinn, Joan Ritter, and Laura Hennigman, that I would not return to my office because Brad Chain had tuberculosis, along with roughly ten other people in the surrounding offices. I explained that I did not want to contract this disease, since I had just tested negative for the tuberculosis infection. I was given an ultimatum by the above mentioned Defendants of either going back to my desk or resigning. I refused to return to my desk, amidst contagion, and was expeditiously terminated from my job.

20.   On or about April 25, 2007 I received a frivolous letter from John Ryan, Chief Assistant District Attorney, that I was being fired for incompetency and insubordination, neither of which were the true grounds for my termination.

21.   The actions of John Ryan, Jim Quinn, Joan Ritter, and Laura Henigman, all state employees under the control of District Attorney Richard Brown, are in violation of my First Amendment right to speak freely about a legitimate health concern. I have a right to speak freely to my employer about my fear of working in a Tuberculosis infested office and to alert others to the existence of a Tuberculosis outbreak at the Queens District Attorney's Office, without having to suffer the consequences of a retaliatory firing by a state agency and those in it employ. Moreover, I have the right to refuse to subject myself to contagion, without having to endure a wrongful termination.

## SECOND CAUSE OF ACTION- WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION (LIBERTY)

22.   I have a liberty right, under the Fourteenth Amendment to work in an environment that is free of Tuberculosis and contagion. When Jim Quinn commanded me to get back to my office, joined by Joan Ritter and Laura Henigman, and then had John Ryan fire me for refusing to work in a Tuberculosis-ridden environment, these state officials violated my liberty rights under the Fourteenth Amendment. Brad Chain was infected with a potentially deadly disease and I had the right to refuse to work beside him, without being wrongfully and maliciously fired.

## THIRD CAUSE OF ACTION-
## DEFAMATION

23. On May 1, 2007 I began to work for an attorney named Albert Dayan on a per diem basis, covering cases in Queens Criminal Court. We simultaneously executed a lease agreement, whereby I would rent space in his law suite.

24. Immediately after beginning to work with Albert Dayan, on or about May 2, 2007, the Queens District Attorney's Office began to disparage my name and my reputation. Specifically, John Ryan, Jim Quinn, Joan Ritter and Laura Henigman contacted Lieutenant Hunter, who supervised all the court officers working out of the Queens Criminal Courthouse. The above Defendants stated to Lieutenant Hunter, and the court officers under her supervision, the following: "Tammy Harris was fired from the D.A.'s Office. She is a security threat and we want her surrounded and stopped every time she enters the courthouse". Moreover, the above Defendants told Lieutenant Hunter "The D.A. wants to be alerted every time Tammy tries to enter the building. Activate a security alert every time she shows up. Do not let her in to the courthouse." These statements were false and malicious, and at no point in time was I ever a security threat.

25. Thereafter, Lieutenant Hunter notified all court officers that "Tamara Harris is a security threat" and "stop her if she tries to enter the building and activate a security alert." This statement was false and malicious.

26. On or about May 2, 2007, Richard Brown, John Ryan, Jim Quinn, and Joan Ritter, started disseminating rumors to court officers at the Queens courthouse, that I was an inept lawyer. These defendants stated that "Tammy Harris is an incompetent lawyer." This statement was false, malicious, and caused damage to my reputation.

27. Joan Ritter, Bureau Chief of the Criminal Court Bureau, subsequently contacted one of my former complainants, whose harassment case I was prosecuting, and stated to him that I was "not a competent attorney." This statement was false and malicious and damaged my reputation.

28. The Queens District Attorney's Office, through its employees: John Ryan, Jim Quinn, Joan Ritter, Laura Henigman, and Sgt. Abruzzo, began to disseminate my photograph to all court officers and court personnel, stating that I was a "security threat" and that I was to be "stopped and surrounded every time I enter the courthouse and the D.A.'s Office was to be alerted."

29. On or about May 2, 2007, John Ryan, Jim Quinn, Joan Ritter and Laura Henigman told prosecutors at the Queens District Attorney's Office, including Brad Chain and all those working in the Criminal Court and Intake Bureaus, as well as other bureaus, that "Tammy Harris is a security threat and that the door codes to the Borough Hall building have been changed so that she cannot enter the building." The office that I once occupied was sealed off and detectives working for the Queens District Attorney's

Office told prosecutors, such as Brad Chain, that no one was allowed in the office because I was a security threat. My photograph was subsequently disseminated to the above mentioned prosecutors, at the instruction of Jim Quinn, John Ryan, Joan Ritter and Laura Henigman, and prosecutors and support staff were instructed to notify law enforcement if they saw me.

30. Jim Quinn, in his communications with Albert Dayan, urged him to terminate his employment relationship with me, based on the above defamatory statements, and threatened retaliation if Mr. Dayan did not sever his ties with me. As a result, Albert Dayan ceased utilizing my services as a per diem attorney and cancelled our lease agreement for office space.

31. The communications of the Queens District Attorney's Office, through the above named Defendants, were published, in that they were conveyed to prosecutors, a complainant known to me, Lieutenant Hunter, and a multitude of court officers in the Queens courthouse. Lieutenant Hunter then escalated the situation by notifying all court officers that I was a security threat, thereby making a further publication of the initial defamatory statements concocted by the above named employees of the Queens District Attorney's Office. Lt. Hunter's statements were false, malicious, and caused damage to my reputation, as well as damage to my employment relationship with Albert Dayan.

32. As a result of the publication described in the above paragraph, my reputation was harmed so as to lower me in the estimation of the community and to deter third persons from associating or dealing with me.

33. The actions and statements of the Queens District Attorney's Office, through its employees, in making untruthful statements characterizing me as a "security threat" and then as an "incompetent attorney" were false, willful and malicious, and were made with the sole intent to disgrace and discredit me.

34. The above defamatory statements and actions; to wit, the dissemination of my photograph, were made within one year of the commencement of this action.

### FOURTH CAUSE OF ACTION-
### VIOLATION OF MY FOURTEENTH AMENDMENT LIBERTY RIGHT TO ENTER A PUBLIC COURTHOUSE AND PRACTICE MY PROFESSION, AND VIOLATION OF MY FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEIZURES

35. On or about May 2, 2007, I attempted to enter the Queens Criminal Courthouse with Albert Dayan, Esq. and was ordered by the court officer guarding the entrance (who I recognize by face, but am unaware of his name at this juncture), that I was to remain where I was, per the instructions of the D.A.'s Office and Lieutenant Hunter. This court officer then activated a security alert throughout the building. Immediately, multitudes of court officers rushed up to me and surrounded me, holding me there until Lieutenant

Hunter arrived. At that point Lieutenant Hunter told Albert Dayan he could enter the building, but that I was forbidden from going inside the Queens Criminal Courthouse. She told me to stay outside the building. Thereafter, the court officer who initially activated the alert, stated to me that the D.A.'s Office had ordered that a security alert go into effect whenever I entered the building. Moreover, he told me that Lieutenant Hunter had stated that I was a "security threat", and that all court officers were to detain and surround me whenever I tried to enter the building. Additionally, Lieutenant Hunter stated to him that each time I try to enter the courthouse, the D.A.'s Office was to be notified of my presence and a security alert was to go into effect.

36.     Upon being unjustifiably surrounded by a multitude of court officers and the security alert activated, Laura Henigman approached the area where I was being detained, and remained there until I left the building.

37.     On or about May 4, 2007 I entered the Queens Criminal Courthouse and walked into courtroom AP5 to cover a case for Albert Dayan and meet a client. While inside the courtroom, and in the presence of the client, a court officer approached me, informed me that a security alert had been activated, and ordered me out of the courtroom. Upon exiting the courtroom I was surrounded again by a multitude of court officers, Lieutenant Hunter, and, this time, Sgt. Abruzzo of the Queens District Attorney's Office. The court officer who initially dragged me out of the courtroom pulled me aside after my removal, and apologized for his actions, stating he was only following the orders of Lieutenant Hunter, who had indicated I was a security threat.

38.     Throughout the month of May, I was harassed each and every time I entered the Queens Criminal Courthouse, security alerts were activated, and I was surrounded by court officers, rendering it impossible for me to practice the profession of law by entering a public building.

39.     The actions of the District Attorney's Office, through John Ryan, Jim Quinn, Joan Ritter, Laura Henigman, and Richard Brown, and the actions of the Office of Court Administration, through Lieutenant Hunter and other court officers, violated my Fourteenth Amendment liberty right to enter a public courthouse and to practice the profession of law without being harassed, surrounded by multitudes of guards, and removed under the fiction that I am a "security threat.".

40.     The actions of the District Attorney's Office, through John Ryan, Jim Quinn, Joan Ritter, Laura Henigman, and Richard Brown and the actions of the Office of Court Administration, through Lieutenant Hunter, and other court officers, are in contravention of my Fourth Amendment right to be free from unreasonable seizures, made applicable to the state through the Fourteenth Amendment of the United States Constitution.

## FIFTH CAUSE OF ACTION-
## CONSPIRACY TO VIOLATE MY CIVIL RIGHTS

41.     John Ryan, Jim Quinn, Joan Ritter, and Laura Henigman, and Richard Brown,, acting in concert with Lieutenant Hunter, of the Office of Court Administration, have engaged in a campaign to disparage my name and reputation through false accusations of my being a danger to the public and an incompetent attorney.  Lieutenant Hunter, in conjunction with the above named defendants of the Queens District Attorney's Office willfully and maliciously trampled on every constitutional right that I am entitled to as an American. Acting together, the above individuals ordered court personnel to stop and surround me, in the multitudes, every time I tried to enter a public building; to wit, a courthouse.  In the process of unreasonably detaining me and surrounding me, members of the Queens District Attorney's Office, such as Laura Henigman and Sgt. Abruzzo, have joined the ranks of those guards who routinely surround me. I have been prevented from practicing law in a public courthouse, humiliated in front of my clients, detained and removed from a public building, and been disparaged to no end.  At no point in time was I ever a danger to the public and the actions of the above Defendants was nothing more than pure harassment.  It was an abuse of power by a group of state officials in a supervisory capacity, who think they are above the laws of New York and of the United States, and found it entertaining to gang up on one person.

## SIXTH CAUSE OF ACTION- INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS AND CONTRACTUAL RELATIONS-

42.     On or about May 10, 2007 Jim Quinn engaged in a telephone conversation with Albert Dayan, warning him not to employ me and threatening repercussions if he continued to do so.  Subsequent to that telephone conversation, Albert Dayan informed me that he had to let me go because, as he put it, he was afraid to mess with the District Attorney's Office.  Additionally, Albert Dayan indicated he would not abide by our lease agreement and that I could no longer rent office space from him in light of the conversation he had with Jim Quinn.  Moreover, the fact that court officers were treating me like a security threat and removing me from the courthouse, at the bequest of the District Attorney's Office, rendered it impossible for him to continue using me as a per diem attorney.  Jim Quinn and Lieutenant Hunter, along with the above named Defendants, were the direct cause of me losing my job and lease with Albert Dayan. Moreover, these Defendants statements and actions have caused me to suffer damage to my personal and professional reputation, present and future financial loss, as well as serious emotional distress.

## SEVENTH CAUSE OF ACTION-
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

43.     All of the above named defendants have engaged in extreme and outrageous conduct.  The Queens District Attorney's Office, through John Ryan, Jim Quinn, Joan Ritter, Laura Henigman, and Richard Brown, has intentionally and vindictively

terminated my employment as an assistant district attorney so that I would cease voicing my concerns about working in a Tuberculosis infested environment. Then, after wrongfully firing me, the District Attorney's Office, through its employees began to disparage my reputation by falsely claiming that I was a security threat. Then, as if that was not despicable enough, these Defendants conspired with Lieutenant Hunter to prevent me from entering a public courthouse and practicing the profession that I love. They harassed me with baseless and unjustifiable security alerts, surrounded me with guards on a routine basis, and religiously removed me from both the courthouse and courtroom in front of both Albert Dayan and my clients. They did all of these things under the pretense that I was a danger to society. However, the true motivation was to break me down emotionally to such and extent that I was physically and mentally incapable of practicing law in Queens County. I had threatened to sue the District Attorney's Office when the above Defendants told me I had the choice of returning to my contaminated office or losing my job. This was the Defendants' way of retaliating against me, and punishing me for speaking up for myself and speaking out about a deadly disease, which Defendants' purposely concealed for months. And then, as if that conduct was not outrageous enough, Laura Henigman and Sgt. Abruzzo, came to watch as the court officers surrounded me, as if this whole travesty of justice was entertaining and funny. The actions of the above defendants were beyond malicious- they were outright sadistic. As such, the above Defendants intended to cause me to suffer severe emotional distress.

44.     I suffered severe emotional distress as a result of defendants' conduct, which distress was caused by defendants conduct.

## DAMAGES

45.     WHEREFORE, Plaintiff seeks compensatory damages in the form of lost wages, amounting to my yearly salary of $55,000; Plaintiff seeks punitive damages in the amount of $ 1,000,000; Plaintiff seeks damages for emotional distress, in the amount of $1,000,000; and Plaintiff seeks to be compensated for the costs and disbursement of this action.

DATED: New York, NY
          April 24, 2008                    Respectfully Submitted,

*[signature]*
Tamara M. Harris
10 West 15th Street, Apt. 324
New York, NY 10011
(212) 710-2758